IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

WILLIAM E. JOHNSON,

    Plaintiff,

v.

W.C. WHITE individually and d/b/a
TENNESSEE MILLS and BARTLETT
MILLS, DAVID WHITE, and THOMAS
WHITE,

    Defendants.

No. 2:11-cv-00119
JURY DEMAND
Judge Sharp/Bryant

## INITIAL CASE MANAGEMENT ORDER

A Case Management Conference was held in the above-entitled action on Tuesday, February 14, 2012. Pursuant to Magistrate Judge Bryant's directive, the parties submit this revised Proposed Order for entry by the Court.

**A.  STATUS OF SERVICE OF PROCESS AND RESPONSIVE PLEADINGS:** Service of process has been achieved on Defendants.

**B.  JURISDICTION:** This court has jurisdiction pursuant to Title 7 of the Civil Rights Act of 1964, 42 U.S.C. 2000e et seq, the Tennessee Human Rights Act, T.C.A. 4-21-101 ct seq and pendent State law including assault, intentional infliction of emotional distress, outrageous conduct, retaliatory discharge for violation of the Tennessee Public Protection Act, T.C.A. § 50-1-304 and common law retaliatory discharge. Plaintiff has been issued a Notice of Right to Sue from the EEOC.

C.  **BRIEF THEORIES OF THE PARTIES:**

1.  **PLAINTIFF:** Plaintiff had been employed by the Mills on Sawmill Road in Overton County for approximately 11 years as a forklift operator until his wrongful discharge on or about April 29, 2011. At this time, defendants advised plaintiff that he was being "laid off" due to a lack of work and was advised to file for unemployment benefits. This alleged reason was, in fact, untrue and a dissembling and fraudulent act by defendant in violation of Title VII of the Civil Rights Act, TCA 4-21-101 et seq., Tennessee Code Annotated § 50-7-3030 (a)(c) and pendent State law involving *ex delicto* actions.

During the years of 2010-2011, W.C. White, individually and d/b/a Tennessee Mills and Bartlett Saw Mill employed approximately 35-40 employees at said location in Overton County, Tennessee, the majority of who were illegal immigrants from Mexico. While working at the Mills, they readily admitted to other employees that they were "illegals" and on one occasion abandoned the Mills, fleeing in their vehicle when having received information that a "raid" was imminent by Immigration Control, Office of Homeland Security, which they had termed "the Federalies" and not returning until the following day.

Beginning in 2010, plaintiff was subjected to a sexually hostile work environment and sexually harassed by one of these illegal alien co-workers, Miguel Flores Barrigan. He worked in the pallet construction area of the plan where plaintiff operated a fork-life machine, moving newly constructed pallets from one location to another. On one occasion, Miguel came to the plaintiff's forklift and attempted to place his hand on plaintiff's crotch and genitalia, causing the plaintiff to slap it away and tell him to stop. During this time period, Barrigan made countless overtures to plaintiff of a homosexual design verbally, written and by emails. Plaintiff emphatically told him that he was a Christian, a family man and wasn't interested in "any of that

2

stuff" and to leave him alone. In one letter plaintiff received, there were comments such as "just want to know your body and touch you. You are very sexy and handsome to me". I know you have a beautiful family -- your family will never know. I swear to you. Answer me when you're ready". Plaintiff did not respond in any fashion so Barrigan began calling and texting plaintiff from his cell phone. Plaintiff told him to stop calling but to no avail.

Plaintiff would ever that he complained to his supervisor. David White, who told me he would "talk" to Miguel which, if he did, had no effect whatsoever. On September 21, 2010, plaintiff had his cell phone number changed.

In the fall 2010, the harassment continued but plaintiff was advised that he had to get along with Miguel and try to befriend him and ignore his advances. Plaintiff could not afford to lose his job so he tried to get along with him. Plaintiff advised Miguel that they had to work together, would try to be friendly but that he did not want any of his sexual "come-ons". The harassment diminished somewhat until the spring of 2011 when Miguel Barrigan began exhibiting psychotic behavior at the plant involving a loaded pistol which he would fire indiscriminately outside the enclosed work area. However, on one occasion Barrigan struck the pistol in the face of a coworker threatening to kill him. He avoided arrest when his fellow illegal worker refused to file charges for fear of being deported.

Shortly thereafter, and on or about April 15, 2011, plaintiff complained to his supervisor, David White, about the 9 mm caliber pistol that Miguel Barrigan had been brandishing it on a continuing basis at the workplace. Mr. White did confront Barrigan about the pistol and why he was bringing it in to the Mill. Barrigan replied that the first bullet was "for William (the plaintiff) and the second one for himself". The plaintiff, William Johnson, was present at this time. This was extremely frightening to him as shortly before this event Miguel had sent

3

plaintiff a picture of himself with the 9mm caliber pistol sticking in his mouth in response to the plaintiff transferring away from Barrigan to a different building to avoid constant contact. Barrigan had sent accompanying messages with a photo stating "Hey amigo, don't make me, give me hard time. I don't want to get bad." "I don't understand why people... Fuc_... with wrong Mexican." "Bye amigo."

On this occasion plaintiff was in fear of his life wondering if he would make it home to his family and believing that Miguel was fully capable of irrational and violent behavior. Plaintiff avers that the 9 mm pistol was later confiscated by the Livingston, Tennessee police department at a drug bust at Barrigan's residence.

Relating these concerns to (Tom/David) White. Plaintiff was told to leave the Mill, go home on a "paid leave of absence until notified to return. After waiting several days and hearing nothing from defendants, plaintiff called the Mill and was advised it wasn't safe to return and that management was in the process of making a decision as to his future employment there.

On April 29, 2011, plaintiff was advised that, in effect, his lay-off was permanent because "he would cause a lot of trouble and conflict if he returned to the Mills". He was instructed to apply for unemployment benefits due to a "lack of work". Plaintiff has been unemployed from said date of April 29, 2011 to the present.

Plaintiff avers that he was effectively terminated from his employment by the defendants, solely because said defendants wanted to avoid any disharmony or dissension among the cell of illegals that could result from the disciplining or the firing of Miguel Barrigan. It is further alleged that these egregious actions by the defendants were designed in order to continue their illegal enterprise and the substantial profits derived therefrom.

4

Plaintiff avers that the unconscionable actions and inactions set forth herein constitute the commission of "outrageous conduct" as defined by law. The patent injustice in firing the innocent victim of prolonged sexual harassment and the terror of threats upon his life yet retaining the culprit responsible for the offenses is indefinable. The cruelty of the defendants in doing so could only be motivated by their commitment to protect illegal workers and their own illegal, but profitable enterprise.

Plaintiff avers the following:

(a) He was subjected to, not only the sexual harassment by Miguel Barrigan time and again at the Mills, but the teasing and snickering by co-workers and office personnel regarding Miguel's advances which were embarrassing and humiliating to Mr. Johnson. The degradation from being the subject of this perversion was anything but comedy to of a family man.

(b) Since May, 2011, plaintiff has suffered and continues to suffer severe mental anguish and suffering proximately caused by the specific events he has undergone as set forth herein.

Plaintiff avers that W.C. White and David White and Thomas White, as co-conspirators, aided and abetted the discriminatory treatment of the plaintiff thus being individually liable to the plaintiff. Furthermore, said defendants by their condoning these activities for months and then firing the innocent victim of these acts, committed "outrageous conduct".

As a result of the foregoing actions of the defendants, plaintiff has (1) been subjected to a same sex hostile work environment in that the sexual advances of Barrigan were unwelcome, offensive, continuous and not isolated events. They were pervasive, intimidating and severe to the point that plaintiff's work was effected all of which constitute an objectively hostile work environment. (2) Been wrongfully terminated and retaliated against due to the fact that he complained about the illegal sexually hostile work environment in that plaintiff engaged in

5

activity protected under Title VII and the THRA; the defendants knew that he engaged in the protected activity; the defendants subsequently took an adverse, retaliatory action against the plaintiff, and/or the plaintiff was subjected to severe or pervasive retaliatory harassment by his supervisor; and the protected activity and the adverse action taken against the plaintiff were casually connected. (3) The illegal acts supported by the defendants constitute "outrageous conduct".

The aforementioned individual defendants, W.C. White, Thomas White and David White are liable for aiding and abetting in the illegal sexually hostile work environment as aforementioned in violation of T.C.A. 4-21-301.

2. **Defendant's Theories:**

   A. **W.C. White**

   Mr. White is not liable for any of the claims made. The Plaintiff was Mr. White's employee. Miguel Barrigan, the alleged harasser, was not Mr. White's employee. Rather, Mr. Barrigan is an employee of Bartlett Saw Mill, L.L.C. Mr. White is not an owner of Bartlett Saw Mill, L.L.C. Mr. White did not have the right or power to discipline or terminate Mr. Barrigan. Thus, even if Mr. Barrigan illegally harassed the Plaintiff (which is highly doubtful). Mr. White cannot be vicariously liable for such conduct.

   The Plaintiff and Mr. Barrigan had a relationship that went beyond friendship. Witnesses have confirmed seeing the Plaintiff touching Mr. Barrigan in the very manner in which the Plaintiff now accuses Mr. Barrigan of touching the Plaintiff. Further, the Plaintiff never notified Mr. White or his manager, Thomas White, of any specific harassing conduct. He did state that he was not getting along with Mr. Barrigan, but never notified his employer that Mr. Barrigan was allegedly sexually harassing the Plaintiff. In addition, much of the alleged conduct did not

6

occur at the Plaintiff's place of employment, thus, Mr. White cannot be liable for any of that conduct.

Mr. White does employ several persons of Hispanic descent. All employees have provided Social Security information, and Mr. White pays Social Security taxes for all employees. The allegation that Mr. White runs an enterprise on the backs of illegal immigrants is not only false, but alleged simply to stir up the emotions of the Court and the jurors.

The Plaintiff was, at most, an average employee The Plaintiff has a history and reputation of being an agitator who frequently got into fights with coworkers. The Plaintiff brought firearms to work from time to time and, in fact, sold a firearm to Mr. Barrigan. After an altercation with another forklift operator, the Plaintiff asked to be reassigned to the saw. Within a few weeks, the Plaintiff requested that Mr. White lay him off. Mr. White has never fired anybody. In the past, if he needed to let someone go, he would lay them off so that they did not have to tell a prospective employer they had been fired. The employee could also draw unemployment (which is paid for by Mr. White). In short, the Plaintiff quit, and Mr. White is still paying the Plaintiff through unemployment,

The facts will show that Mr. White has no liability to the Plaintiff, and the case will be dismissed. Although not styled as a counterclaim, Mr. White intends to seek his attorneys' fees pursuant to the Civil Rights Act when this case is dismissed.

B. **Thomas White**

Thomas White is not liable for any of the claims made. Thomas White was a supervisor at Tennessee Mills where the Plaintiff was an employee. Miguel Barrigan, the alleged harasser, was not under his supervision and was not an employee of Tennessee Mills. Mr. Barrigan is an

employee of Bartlett Sawmill, LLC. Thomas White does not have the right or power to terminate employees of Bartlett Sawmill.

As a supervisor, there is no individual liability under Title 7 of the Tennessee Human Rights Act on Thomas White. Even assuming Mr. Barrigan illegally harassed the Plaintiff, this Defendant cannot be vicariously liable for such conduct.

Thomas White was aware that Mr. Barrigan and the Plaintiff had a relationship that went beyond friendship based upon witness statements that the Plaintiff had been seen touching Mr. Barrigan in the very manner in which the Plaintiff now accuses Mr. Barrigan of touching the Plaintiff. The Plaintiff never notified Thomas White of any specific harassing conduct. He did state that he was not getting along with Mr. Barrigan and Thomas White agreed to let him work at a job that would avoid contact with Mr. Barrigan.

The Plaintiff has a history and reputation of being an agitator, who frequently got into arguments with co-workers. The Plaintiff brought firearms to work from time to time and, in fact, sold a firearm to Mr. Barrigan. The Plaintiff requested that he be laid off from his job which action allowed him to draw unemployment benefits.

The facts will show that Thomas White has no liability to the Plaintiff and the case will be dismissed.

    **C.**    **David White**

David White would fully adopt and re-state the theory as articulated by Defendant Thomas White.

    **C.**    **ISSUES RESOLVED:**    Jurisdiction

    **D.**    **ISSUES STILL IN DISPUTE:**

All other issues are in dispute.

8

E. **MANDATORY INITIAL DISCLOSURES:** Pursuant to Federal Rule of Civil Procedure 26(a)(1), all parties must make their initial disclosures within 30 days after the initial case management is entered in this cause.

F. **DISCOVERY:** The parties shall complete all written discovery and dispose all fact witnesses on or before **September 15, 2012**. Discovery is not stayed during dispositive motions, unless ordered by the Court. No motions concerning discovery are to be filed until after the parties have conferred in good faith and, unable to resolve their differences have scheduled and participated in a conference telephone call with the magistrate judge.

G. **MOTIONS TO AMEND:** The parties shall file all Motions to Amend on or before **August 15, 2012**.

H. **DISCLOSURE OF EXPERTS:** The Plaintiff shall disclose his expert by July 1, 2012. The Defendants shall identify and disclose all expert witnesses and reports on or before August 1, 2012.

I. **DEPOSITIONS OF EXPERT WITNESSES.** Deposition of experts shall be completed by September 15, 2012.

J. **DISPOSITIVE MOTIONS:** The parties shall file all dispositive motions on or before **October 15, 2012**. Responses to dispositive motions shall be filed within <u>thirty (30) days after service</u>. Optional replies shall be filed within ten (10) days after service of the response. Briefs shall not exceed <u>20 pages</u>. No motion for partial summary judgment shall be filed expect upon leave of court. Any part wishing to file such a motion shall first file a separate motion that gives the justification for filing a partial summary judgment motion in terms of overall economy of time and expense for the parties, counsel and the court.

9

K. **TRIAL:** Jury trial is set to begin on March 5, 2013, at 9:00 a.m. A pretrial conference shall be held on February 11, 2013, at 2:30 p.m. before Judge Sharp. Trial is expected to take 2-3 days.

L. **SETTLEMENT POTENTIAL:** Settlement has yet to be attempted. Should progress toward settlement not be made, the parties may raise the issue of a settlement conference with the Court.

M. **SPECIAL PROCEDURES FOR HANDLING PRIVILEGED INFORMATION:** The parties believe that there may be documents and other information that may be produced in discovery that are commercially sensitive or otherwise confidential in nature. The parties will work together to agree on a form of protective order with a mechanism for the appropriate protection of such information and for filing certain documents under seal when necessary, and submit the proposed protective order to the court for its approval.

N. **SCHEDULING OF ADDITIONAL CASE MANAGEMENT CONFERENCE:** Any party may request additional case management conferences as necessary.

**It is so ORDERED.**

DATE: February 22, 2012

*s/ John S. Bryant*
Honorable John Bryant
United States Magistrate Judge

**APPROVED FOR ENTRY:**

s/James Harris, BPR#014713
s/Robert J. Shockey BPR#2092
Attorney at Law
2400 Crestmoor Road
Nashville, Tennessee 37215
615-260-3677
jhar401@comcast.net
Attorney for Plaintiff

s/Stephen A. Lund
Tune, Entriken & White, P.C.
Regions Center
315 Deaderick Street
Suite 1700
Nashville, TN 37238
615-244-2770
615-244-2778
Email: slund@tcwlawfirm.com

Attorney for W.C. White d/b/a Tennessee Mills


s/Michael R. Giaimo
Chaffink, Chaffin & Giaimo
204 N. Washington Avenue
Cookeville, TN 38501
931-372-7515
Email: mrgiaimo@yahoo.com

Attorney for David White


s/James Dale White Jr.
P.O. Box 333
Celina, TN 38551
931-243-3535
Email: jdwhite@info-ed.com

Attorney for Thomas White

11

Case 2:11-cv-00119   Document 17   Filed 02/22/12   Page 11 of 11 PageID #: 77